

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-16-00032-CR

THE STATE OF TEXAS, Appellant

V.

JAMEL MCLELLAND FOWLER, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 30,511

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion on Remand by Justice Burgess

# OPINION ON REMAND

## I. Procedural History

The State returned three indictments against Jamel McLelland Fowler arising out of a series of burglaries and thefts in and around the Royse City, Texas, area.[1] The State tried all three cases together. The first case involved the theft of an all-terrain vehicle belonging to Paul Blassingame (the ATV case), and the second case involved the theft of a trailer (the theft of trailer case). The present case arose out of two burglaries that occurred at a building on William Martin's property.[2] Additionally, the State introduced extraneous evidence of other burglaries and thefts that occurred during the same time period in the surrounding counties.

According to Martin, during the first burglary, a significant amount of his property was stolen from the building (the first Martin burglary). After the first Martin burglary, Martin installed two game cameras inside the building. Sometime after the first Martin burglary, Martin's building was burglarized again, and the game cameras were stolen (the second Martin burglary). When viewing his property after the second Martin burglary, Martin found a cell phone near a section of fence that had recently been cut which was approximately twenty-five feet from the building. The Hunt County Sheriff's Office determined that the cell phone was registered to a "Mr. Fowler." However, the owner's first name was not determined.

---

[1] Testimony was presented regarding other burglaries which occurred in Royse City, Texas. Royse City is located partly within Rockwall County, Collin County, and Hunt County. Because some of the burglaries occurred outside Hunt County, they were not the subject of the present Hunt County prosecution.

[2] Martin testified that his property contained a house and an airplane hangar in which he stored tools and aircraft parts. The burglaries at issue in this case both involved entry to the airplane hangar, not the house. Accordingly, all references in this opinion to Martin's building refer to his airplane hangar.

## A. The Trial Court Proceedings

The jury found Fowler guilty of burglarizing Martin's property "on or about December 14, 2014."[3] With the State's consent, Fowler withdrew his request that the jury decide punishment. After a punishment hearing, the trial court sentenced Fowler to serve six months' incarceration in the Texas Department of Criminal Justice. The trial court also ordered Fowler to pay court costs in the amount of $266.25. However, after pronouncing sentence, the trial court granted Fowler's motion for new trial on the basis that the evidence was insufficient to support the jury's verdict and then entered a judgment of acquittal based on double jeopardy grounds. The State appealed the trial court's ruling to this Court.

## B. The Direct Appeal to This Court

In its Brief on Direct Appeal, the State argued that all of the events described by Martin occurred on December 11, 2014:

> Mr. Martin had not been out to his property for about a week, and on December 11[th], according to Dep. Robinson[,] he reported lots of property stolen from his airport hangar building. RR. Vol. 8, p. 268, Vol. 9, p. 176. Mr. Martin ultimately determined that only two game cameras were stolen from inside the building on this occasion. RR. Vol. 8, p. 287.

State's Brief on Direct Appeal, p. 13. The State then argued that the same circumstantial evidence that linked Fowler to the other charged and extraneous offenses also "Linked Appellee to the Burglary of Mr. Martin's Building on or Before December 12, 2014." State's Brief on Direct Appeal, p. 20.

---

[3]The State informed the trial court that, while the date in the indictment was "on or before December 14, 2014," the burglary actually occurred on December 11, 2014. From time to time, the State asserted at trial that the burglary occurred on December 11, December 12, and December 14, but according to the testimony, the true date is December 11, 2014.

In reviewing the record, we observed that Martin testified (1) that this property had been burglarized twice, (2) that a lot of his property was stolen during the first burglary, (3) that he gave a statement to the deputy sheriff on the day he investigated the first burglary, (4) that his statement was dated December 11, 2014, and (5) that the second burglary—where only the game cameras were stolen and the cell phone was found—occurred five to six weeks after the first burglary.[4]

---

[4]During direct examination, Martin testified as follows:

Reporter's Record Volume 8, p. 268:

Q.  . . . . Which one of those are you talking about was burglarized back in December of 2014.

A.  The hangar and the house. . . .

Reporter's Record Volume 8, p. 269:

Q.  What about anything else on your property? Any kind of surveillance cameras?

A.  **Well after the first burglary**, **I went down and got a couple of game cameras.** I heard they work fairly well. Put them up in the hangar about 12 feet up in the overhead. **And came back a day or so later to find that I had been hit while I was gone.** They took the two cameras and removed them.

Q.  Okay, so, within -- **what's the time span between the first burglary at the hangar and the second one?**

A.  It would be **five or six weeks**.

(Emphasis added).

Reporter's Record Volume 8, p. 277:

Q.  . . . . Do you remember if you gave a written statement to the inspector?

A.  **Well, I had already given him a statement originally.**

Q.  **Okay. When would you have already given them a statement originally?**

A.  **After the burglary was discovered the first time.**

. . . .

Q.  **The second date though when you go up to turn in the phone**, do you remember if you gave a statement, a written statement, that time around?

A.  I think probably we discussed it. But I'm not sure if you would call it a statement or so. **He just took the phone and checked it and managed to get it turned on**.

(Emphasis added).

Reporter's Record Volume 8, p. 278:

Q.  . . . . [W]ould you look at that and tell me if that looks familiar?

A.  Yes.

Q.  Okay.

A.  It's an affidavit of mine.

. . . .

Q.  Okay. Do you also recognize the date that you put your signature on this document?

A.  Yes.

4

Because the State argued that the evidence was sufficient to support Fowler's guilt for the burglary that occurred on December 11, 2014, we addressed the sufficiency of the evidence to support Fowler's conviction for the first Martin burglary that Martin testified had occurred on December 11, 2014. Because Martin testified that the cell phone was not found until five to six weeks after that date, we held that the cell phone was unrelated to the first Martin burglary. Accordingly, we affirmed the trial court's ruling. *State v. Fowler*, 532 S.W.3d 456 (Tex. App.—Texarkana 2017), *judgment vacated*, 523 S.W.3d 681 (Tex. Crim. App. 2017) (per curiam).

### C.    The State's PDR to the Court of Criminal Appeals

The State then filed a petition for discretionary review (PDR) with the Court of Criminal Appeals. In its PDR, the State argued that the events described by Martin occurred on different dates. It then argued, "The court of appeals' first significant error was using the wrong burglary offense to assess sufficiency. The court stated that the Appellee was charged with the first (November) burglary. . . . That is wrong. The record demonstrates that the State sought a

---

Q.      Okay. **What was the date that it turns out you gave an affidavit?**
**A.      11 of December, 2014.**
(Emphasis added).
        On cross-examination, Martin testified,
        Reporter's Record Volume 8, p. 287–88:
        Q.      Okay. Now then, sir, you gave a list of items at some point to the Sheriff's Department about things that you thought were missing from your hanger [sic], your place out there, right?
        A.      Yes.
        Q.      **And the things that you gave the list for, that was from five or six weeks before this second incident that we're talking about, wasn't it?**
        A.      **Yes.**
        Q.      **Because in the second incident, other than your game cameras, nothing was missing?**
        A.      **Nothing was missing.**
        Q.      All right. But there was a third hole cut in the fence, right?
        A.      Yes.
(Emphasis added).

5

conviction based on the second (December) burglary." State's PDR, p. 4. It also argued, for the first time, that due to the "on or about" language in the indictment, the evidence is sufficient if it proves either of the two burglaries occurred at Martin's property.

### D. The Court of Criminal Appeals' Opinion

The Court of Criminal Appeals granted the State's PDR and vacated our prior opinion without briefing from the parties. *State v. Fowler*, 523 S.W.3d at 681. In its opinion, the Court of Criminal Appeals agreed with the State's position in its PDR—i.e., that the events described by Martin occurred on separate dates and that we considered the wrong offense—and it directed us to consider the sufficiency of the evidence applicable to the "second burglary." *Id*.

## II. The Issue Before Us on Remand

Accordingly, we must now evaluate the sufficiency of the evidence based on the second Martin burglary. Yet, a question remains regarding the dates that the two Martin burglaries occurred.

As noted above, the State introduced evidence of several thefts and burglaries—some of them as extraneous offenses—that occurred in the Royse City area in November and December 2014. The State argued at trial that all of the charged and extraneous thefts and burglaries were related and that the cumulative evidence from those offenses established Fowler's guilt for the Martin burglary beyond a reasonable doubt. Yet, if—as Martin testified on direct examination— the first Martin burglary occurred on December 11, 2014, and the second Martin burglary occurred five to six weeks later, then the second Martin burglary occurred almost two months after the last of the other timeline events. On the other hand, if—as the State urged in its PDR—the second

6

Martin burglary occurred on December 11, 2014, and the first Martin burglary occurred in November 2014, then the two Martin burglaries fall neatly within the November/December timeline covering all of the Royse City burglaries. Therefore, in order to evaluate the sufficiency of the evidence based on the second Martin burglary, we must first resolve the question of when—according to the record—the two Martin burglaries occurred.[5]

---

[5]Even though we found the evidence to be insufficient on direct appeal based on the timeline established by Martin's testimony, and even though the Court of Criminal Appeals reversed and vacated that opinion, we conclude that the Court of Criminal Appeals' opinion does not resolve the timeline question for three reasons. First, the opinion does not identify the burglary in question by date, but by the order in which it occurred:

> Appellee was charged with burglary of a building on property belonging to William Martin in Hunt County on or about the 14th day of December, 2014. At trial, the evidence showed that there were actually two burglaries of this property: a first burglary and then a second burglary five or six weeks later. The trial record reflects that the State's case was based on the second burglary.

*State v. Fowler*, 523 S.W.3d at 681. Second, the Court of Criminal Appeals has made it clear that the granting of a PDR merely invokes that Court's jurisdiction and that, once the PDR is granted, the parties then file briefs and the case is submitted to the Court before it makes any decision on the merits. *See Hunter v. State*, 954 S.W.2d 767, 769 (Tex. Crim. App. 1995) (order) (per curiam) ("Once the Court [of Criminal Appeals] determines to grant review . . . the PDR becomes *functus officio*. This Court then expects, indeed demands, that the parties proceed in regular order dictated by appellate rules. Within thirty days after the grant the petitioning party '*SHALL* file a brief;' within thirty days thereafter, the opposing party '*SHALL* file a brief' . . . ."). Therefore, because the granting of the PDR did not present the issue to the Court of Criminal Appeals for decision, it could not have affirmed the State's PDR timeline against Fowler.

But third, and more significantly, if we interpret the opinion as identifying the burglary by date, it would raise due process concerns. As noted, the Court of Criminal Appeals granted the State's PDR and vacated our prior opinion without briefing from the parties. Accordingly, if we interpret the opinion as affirming the State's PDR timeline, we would have to conclude that the Court of Criminal Appeals resolved this issue against Fowler without giving him an opportunity to be heard and at a time when he did not have appointed counsel. This would implicate Fowler's due process rights. *See Blankenship v. Johnson*, 118 F.3d 312, 317 (5th Cir. 1997) (acknowledging "the well-settled rule that a criminal defendant does not have a right to counsel for the preparation of petitions for discretionary review," but holding that due process is violated "if the state [is] allowed to challenge the defendant's successful direct appeal without providing him with counsel after a discretionary appeal is granted to the state"); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051(d) (West 2005) ("An eligible indigent defendant is entitled to have the trial court appoint an attorney to represent him in the following appellate and postconviction habeas corpus matters: . . . (2) an appeal to the Court of Criminal Appeals . . . ***if a petition for discretionary review has been granted***; . . . .") (emphasis added)). Consequently, we find that the Court of Criminal Appeals opinion does not identify the burglary in question by date, but by the order in which it occurred.

7

We have already observed that the State's position as articulated in its PDR differs from Martin's direct testimony. *See infra* note 4. However, the record also contains Martin's affidavit, dated December 11, 2014, and marked as State's Exhibit 20, in which Martin stated,

> I drove by the house at 3554 FM 1569 this a.m. and noted the door to the hangar/shop was open and upon entering the building I saw the equipment (woodworking) was gone. A combination rip saw wood lathe are missing in addition to all that was taken in a previous burglary. The building was dark and I could not see into the other area of the building. I did note that the 2 game cameras I put in after the first burglary were taken as well. The small storage building was open (the door ripped off) as I followed the trail toward the road alongside of the building (1075). I saw a cell phone beside the trail. I put the cell phone in a Wal-Mart bag and brought it to the sheriff's office.

Clearly, if the jury had seen this affidavit, there would be enough evidence for it to have determined that the State's current timeline is correct. Nevertheless, State's Exhibit 20 was never offered or admitted into evidence, either as a trial exhibit or for appellate purposes.

In *Harden v. State*, the Court of Criminal Appeals ruled that a photograph which was marked as an exhibit, but never formally offered or admitted into evidence, could still be considered for purposes of evaluating the sufficiency of the evidence because it had been displayed to the jury and the defendant failed to object. *Harden v. State*, 417 S.W.2d 170, 174 (Tex. Crim. App. 1967) (op. on reh'g). Yet, in order for this rule to apply, the proponent must establish that the exhibit's contents were displayed before the jury, "treated by the court and the parties as if it had been admitted," or were the subject of "counsel's argument and the court's instructions," and the opposing party failed to object. *Vargas v. State*, 838 S.W.2d 552, 559 (Tex. Crim. App. 1992) (Baird, J., concurring in part, dissenting in part). Beyond Martin's simple acknowledgement of his signature and the date of the affidavit, however, the parties did not discuss the contents of

8

State's Exhibit 20, it was not displayed to the jury, neither counsel discussed the exhibit in their arguments to the jury, and the trial court did not instruct the jury on that issue. Thus, because we are constrained to look only at the evidence that was introduced at trial and presented to the jury, State's Exhibit 20 cannot be considered as evidence by us in reviewing the sufficiency of the evidence.[6]

Additionally, the State's PDR position that the first Martin burglary happened in November and the second Martin burglary happened in December not only differs from Martin's trial testimony and its position on direct appeal, it also contradicts its position before the trial court. Specifically, at trial, the State made the following statement to the trial court:

> Reporter's Record, Volume 10, p. 7:
> MR. GROGAN: Your Honor, the other housekeeping matter related to discovery issues; on whatever day Mr. Martin testified to, he referred to being a victim of a previous burglary four to five weeks earlier.
> THE COURT: Yes, sir.
> MR. GROGAN: I think that was his testimony. So out of an abundance of caution -- we didn't think that was related at all to this case. We went ahead and had Inv. Phillips, who is already a witness in two of these burglary cases, to run the report on that one. And it turns out that it's 12 weeks prior. But we made a copy to turn over to Mr. Brooks on a 12-week prior burglary on Mr. Martin's address. It's not anything related to the charged offense, but we did get that to him.

According to this statement, if the second Martin burglary occurred December 11, 2014—as the State argues in its PDR—then the first Martin burglary would have occurred in September 2014 some three months before the second Martin burglary. And, if the first Martin burglary occurred in September 2014, then it would also have occurred six to seven weeks before the first Royse City

---

[6]We have no explanation for why this affidavit is included in the record but was never offered or admitted at the trial as either a trial or appellate exhibit. Our search of the record revealed that the affidavit was never discussed more than the single instance where the State asked Martin to verify that it was his affidavit and asked him to identify the date he signed it. Thus, despite the fact the affidavit is in the record, it is not a part of the record for appellate purposes.

9

burglary. On the other hand, if the first Martin burglary occurred in November 2014—as the State also argues in its PDR—then the second Martin burglary could not have occurred on December 11, 2014. Rather, it would have occurred sometime in February 2015. Consequently, the timeline urged by the State in its PDR is inconsistent with the statement it made to the trial court.

Ordinarily, a party is estopped from arguing a position on appeal that contradicts its position at trial. *See Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003). However, in closing arguments, Fowler argued, "I can tell you right now Mr. Fowler and I are standing right here and we are not disputing that in December 2014[,] Mr. Martin's hangar or shop was burglarized and somebody took, I guess, a couple of game cameras according to him. And it probably had been hit four or five weeks before and we don't know what got took out of it at that point." In *Shaffer v. State*, the Fort Worth Court of Appeals held that "a party may use a formal judicial admission made by a party opponent as a substitute for evidence if the statement is clear, definite, and unambiguous." *Shaffer v. State*, 184 S.W.3d 353, 360 (Tex. App.—Fort Worth 2006, pet. ref'd) (citing *Davidson v. State*, 737 S.W.2d 942, 948 (Tex. App.—Amarillo 1987, pet. ref'd)). And in *Hitchery v. State*, the Dallas Court of Appeals held that "[a] defense counsel's concession at trial can be a binding judicial admission of an appellant's guilt." *Hitchery v. State*, Nos. 05-04-00032-CR & 05-04-00033-CR, 2005 WL 237230, at *5 (Tex. App.—Dallas Feb. 2, 2005, no pet.) (not designated for publication).

Therefore, we are presented with a unique record in which (1) an affidavit that supports the State's PDR timeline exists in the record, but because it was never admitted into evidence or treated by the parties as if it were, we cannot consider it in this case; (2) the State admitted facts to the

10

trial court that would render its PDR timeline impossible; but (3) the defendant judicially admitted that the State's PDR timeline is correct. Essentially, we are presented with competing admissions by both parties that favor their opponent. Ordinarily, the two opposite omissions would cancel each other out, and we would look to the record to determine if there is sufficient evidence from which the jury could have found Fowler guilty beyond a reasonable doubt based on the State's PDR timeline. Nevertheless, we are not presented with a typical situation because the State made its admission to the trial court outside the presence of the jury, whereas, Fowler made his statement to the jury in closing arguments.

To be more specific, because the jury was the fact-finder during the guilt/innocence phase of trial, Fowler's admission constitutes a judicial admission, whereas, the State's admission to the trial court outside the jury's presence does not. And, because Fowler's statement to the jury constitutes a judicial admission, it establishes the timeline even in the face of the State's contradictory admission to the trial court and Martin's testimony. *See Brito Carrasco v. State*, 154 S.W.3d 127, 131 n.10 (Tex. Crim. App. 2005) (Cochran, J., concurring) (noting that a "judicial admission, unless it should be allowed by the court to be withdrawn, is conclusive in the case, whereas the evidential admission is not conclusive but is always subject to be contradicted or explained"). Therefore, we will proceed with the timeline as argued by the State in its PDR and as admitted by Fowler at trial, notwithstanding Martin's testimony and notwithstanding the State's trial admission that would make the State's PDR timeline impossible.

Finally, one further fact should be noted regarding the Court of Criminal Appeals' opinion before deciding the issue before us. Namely, the Court of Criminal Appeals has foreclosed the

11

State's ability to argue sufficiency based on proof of either burglary. Specifically, the Court of Criminal Appeals did not abate the appeal and remand the case to us to evaluate whether the evidence was sufficient to support Fowler's guilt for the second Martin burglary in conjunction with the sufficiency analysis we previously performed regarding the first Martin burglary. *State v. Fowler*, 523 S.W.3d at 681. Instead, it granted the State's PDR, vacated our prior opinion where we considered the sufficiency of the evidence involving the first Martin burglary, and remanded the case to us to consider the sufficiency of the evidence of the second Martin burglary only. *Id*. Stated another way, the Court of Criminal Appeals did not hold that we failed to consider sufficiency of the evidence of both Martin burglaries, but instead held that we considered the sufficiency of the evidence for the "wrong" burglary. *Id.* Therefore, the opinion foreclosed the State's ability to argue sufficiency based on either of the two burglaries based on the "on or about" language in the indictment. Rather, we are to address sufficiency based only on the second Martin burglary where the cell phone was found.

Consequently, we will now consider whether the evidence is sufficient to support Fowler's conviction for only the "second Martin burglary"—i.e., the burglary where the game cameras were stolen and the cell phone was found. Because the Court of Criminal Appeals vacated our prior opinion and held that we considered the wrong burglary, we will not consider the sufficiency of the evidence regarding the first Martin burglary. Moreover, as explained above, we will examine the sufficiency of the evidence for the second Martin burglary based on the State's PDR timeline.

12

### III. Standard of Review

We have previously held that,

> "[w]here the trial court, as in this case, enters a judgment notwithstanding the verdict, we treat it as the functional equivalent of an order granting a motion for new trial for insufficient evidence. A motion for new trial based on insufficiency of the evidence presents a legal rather than a factual question, and the trial court must apply the same legal test as that employed by the appellate court. The trial court must decide, after viewing the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. If the evidence meets the standard, it is an abuse of discretion for the trial court to grant the motion for new trial."

*State v. Fuller*, 480 S.W.3d 812, 819 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *In re State*, No. 06-15-00018-CR, 2015 WL 545838, at *1 (Tex. App.—Texarkana Feb. 11, 2015, no pet.) (mem. op., not designated for publication); *State v. Savage*, 905 S.W.2d 272, 274 (Tex. App.—San Antonio 1995), *aff'd by* 933 S.W.2d 497 (Tex. Crim. App. 1996); *State v. Chavera*, 386 S.W.3d 334, 336 (Tex. App.—San Antonio 2012, no pet.)). Therefore, the issue before us is whether the evidence is sufficient to support Fowler's conviction for the second burglary.

In reviewing the legal sufficiency of the evidence, appellate courts review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Courts examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences

13

from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)

(citing *Jackson*, 443 U.S. at 318–19).  Legal sufficiency of the evidence is measured by the

elements of the offense as defined by a "hypothetically correct jury charge." *Malik v. State*, 953

S.W.2d 234, 240 (Tex. Crim. App. 1997).  The hypothetically correct jury charge is "one that

accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the

State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately

describes the particular offense for which the defendant was tried." *Id.*

> Moreover,

> The evidence is viewed in the light most favorable to the verdict because it is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  This standard "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law," and it prevents the reviewing court from making its own subjective determination of the defendant's guilt.  *Id.*  Although an appellate court cannot act as a thirteenth juror and make its own assessment of the evidence, it does act as a safeguard to ensure that the fact[-]finder's verdict is a rational one that is based on more than a "mere modicum" of evidence.  *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  Theorizing or guessing as to the meaning of the evidence is never adequate to uphold a conviction because it is insufficiently based on the evidence to support a belief beyond a reasonable doubt.  *Hooper v. State*, 214 S.W.3d 9, 15– 16 (Tex. Crim. App. 2007).  But the fact[-]finder is allowed to draw any reasonable inference that is supported by the evidence.  *Jackson*, 443 U.S. at 319.  If the record supports reasonable, but conflicting, inferences, we presume that the fact[-]finder resolved the conflicts in favor of the conviction.  *Id*. at 326.

*Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016).

## IV. Analysis

### A. What Evidence Is there Linking Fowler to the Second Martin Burglary?

As noted above, the State introduced evidence of several burglaries that occurred in the Royse City area during November and December 2014. To explain how it believed these burglaries were related, the State presented a timeline of events at trial based on the following evidence.

**November 3, 2014 at 1:45 a.m.**

Royse City Police Officer Ryan Curtis encountered a Nissan Xterra at 1:45 a.m. on County Line Road in Royse City near an industrial area behind some industrial businesses with very little lighting. The vehicle was on an unimproved dirt road immediately behind a business named Four Brothers that sells lawn mowers and tractor supplies.[7] Officer Curtis did not recall having seen any vehicle traffic on that road for years.

The Xterra was occupied by a woman named Virgina Cox. Cox told Officer Curtis that the vehicle was out of gas and that her boyfriend was at a gas station getting gas for the vehicle. She did not give her boyfriend's name. She also said that they were having car trouble. In response to Cox's statement, Officer Curtis asked another officer to check the nearest gas station and see if he could corroborate her story about her boyfriend. Then he asked Cox to try and start the vehicle, and she was able to do so. She could not explain why it started if it was out of gas.

---

[7]As noted above, the city limits of Royse City, Texas, overlap portions of three counties: Rockwall, Collin, and Hunt. *See supra* note 1. The Four Brothers and Lattimore Materials businesses are located in Rockwall County and, therefore, were not the basis of Fowler's Hunt County prosecution. However, evidence regarding these burglaries was introduced as extraneous-offense evidence during the trial of the Hunt County offenses.

Officer Curtis then searched the vehicle and found several bolt cutters. He found nothing else in the vehicle. Officer Curtis searched the area for her boyfriend, but did not find him. Officer Curtis was at the scene with Cox and the Xterra for about twenty to thirty minutes.

Officer Curtis thought Cox's presence at that area was suspicious because the area was dark and because there had been quite a few burglaries and thefts at Four Brothers. Also, he believed that, if they were truly out of gas, Cox and Fowler could have parked on another road—Industrial—which was next to the Interstate. In addition, they had travelled another fifty to seventy-five yards past a parking lot that was relatively well lit to stop at a location where there was no lighting. Also, the parking lots in the area were concrete, but instead of parking on the concrete, the vehicle stopped on a dirt road that was not maintained. Officer Curtis never encountered Fowler at that time.

**November 3, 2014, at 7:00 a.m.**

Later that morning, at around 7:00 a.m., Officer Tim West of the Royse City Police Department encountered the blue Nissan Xterra again. Officer West testified that he saw the vehicle stopped on County Road 1777. The vehicle was sitting on the side of the road. Officer West drove past it and did not see anyone inside. He turned around and came back. The second time by, he saw Fowler inside the car together with a woman who was slumped down in the passenger seat. When he made contact with them, Fowler told him they had broken down.

Officer West testified that, at a briefing during their shift change at work that morning, he had learned that officers from the previous shift had encountered a blue Xterra stopped on County Line near Industrial. According to the briefing, the occupants had told officers they were broken

16

down and had run out of gas. The area where Officer West encountered Fowler was approximately three miles from the location where the vehicle had been seen earlier that morning.

Fowler asked Officer West to use his cell phone to call someone. Officer West refused to let Fowler use his cell phone, but instead, he called the number Fowler gave him. However, no one answered the call. Another Royse City officer, William Porter, asked Fowler for permission to search his vehicle, and Fowler agreed. Officer Porter found large bolt cutters, wire-style cutters, binoculars, and a pry bar. Fowler told them he had the tools because he was an electrician. Officer West testified that this excuse was suspicious because—based on his personal experience in working around electricians—he never saw electricians using those kinds of tools.

**November 6, 2014:**

Jaime Torrez, another Royse City Police Officer, testified that, on November 6, 2014, he was dispatched to a local business named Lattimore Materials.[8] A Lattimore representative named Eric Rogers met Officer Torrez at the scene. After talking with Rogers, Officer Torrez went to an area at the business where some heavy-duty wires or cables had been cut. At that time, he retrieved three heavy-duty bolt cutters which had been used to cut the cables.

**November 18, 2014:**

On November 18, 2014, Blassingame called the Hunt County Sheriff's Department to report that his Kawasaki Mule ATV was missing. Hunt County Sheriff's Deputy Amy Richardson met Blassingame at his property. Deputy Richardson took information for her report and took

---

[8]*See supra* note 5.

some photographs. She observed that a portion of Blassingame's wire fence had been cut. She also obtained a vehicle identification number (VIN) for the ATV.

**December 5, 2014:**

On December 5, 2014, Lattimore's former General Manager, Duane Wetteland, discovered that the lock to the building was cut and that the building had been broken into again. Wetteland called the Royse City Police Department to report the break-in. Officer Torrez was one of the officers who responded to the December 5, 2014, Lattimore burglary. When the police arrived, Wetteland and the officers noticed some off-road vehicle tracks around the building leading to nearby railroad tracks. Wetteland and one of the officers followed the ATV tracks and found a Kawasaki Mule ATV. The ATV was located in a heavy treeline approximately 100 yards north of the Lattimore property.

The officers found a VIN on the ATV and verified that it was Blassingame's ATV. They also found a receipt from a Family Dollar Store in the ATV. One of the items identified on the receipt was a box cutter. They also found an empty package for a box cutter near the ATV.

Officer Torrez went to the Family Dollar Store that had issued the receipt. He asked the manager to look at the recordings from the store's video surveillance system for that day. Officer Torrez made a copy of that recording with his department-issued surveillance camera. The recording depicted a man making the purchase at the Family Dollar Store. The recording was introduced into evidence and played for the jury.

**December 11, 2014:**

Martin testified that he called the Hunt County Sheriff's Department on December 11, 2014, to report that his building had been burglarized. Martin's property contained an airplane hangar, a wood shop, and a primary residence. The perimeter of his property was enclosed with a fence with a gate. Martin testified that he had been burglarized twice approximately five to six weeks apart. He also testified that his fence had been cut twice during the first burglary. After the second burglary, he found a third section of cut fence.

As he walked around the property after the second burglary, Martin found a cell phone. The place where he found the cell phone was approximately twenty-five feet from the airplane hangar that was broken into. It was also about three feet from the newly cut section in the fence. He put the cell phone in a plastic bag, took it to the Sheriff's office, and gave it to one of the inspectors at that office. Former Hunt County Sheriff's Captain Nathan Ehrhart testified that he was able to turn the cell phone on. He further testified that he used a computer program, called CLEAR, to determine who owned the phone. He also testified that the CLEAR program showed that the cell phone was registered to a "Mr. Fowler," but he did not determine a first name for the owner.

Hunt County Sheriff's Deputy Joshua Robinson was dispatched to Martin's property on December 11, 2014. He talked to Martin and took photographs of the scene. Martin testified that he had secured the door to the hangar after the first burglary. After the second Martin burglary, the door was ajar, and it looked as if someone had kicked it open. Deputy Robinson also believed that the entrance to the airplane hangar had been forced open, but based on his training and

19

experience, he could not tell if it was damage related to the second Martin burglary or was damage from a prior burglary. Martin noticed what looked like ATV tracks after the first Martin burglary, but not after the second Martin burglary. He showed the deputy the tracks, and he took photographs of them.

**B.    Is the Evidence Sufficient to Prove Fowler's Guilt for the Second Martin Burglary?**

The State's theory at trial was that the Lattimore Materials burglaries, the Blassingame ATV theft, and the Martin burglaries were all related. The State first argued that the events were related because each one involved an ATV. Specifically, the State argued that, because the evidence is sufficient to show that Fowler stole the Blassingame ATV, because Martin saw ATV tracks on his property, and because the Blassingame ATV was recovered at the Lattimore Materials property after the second Lattimore Materials burglary, then Fowler's guilt in stealing the Blassingame ATV was evidence that proved Fowler committed the second Martin burglary as well.[9]

The State also argued that the bolt cutter evidence linked the events. Specifically, because (1) Fowler was found in the possession of bolt cutters prior to the Lattimore Materials burglaries,

---

[9]However, we note that the ATV tracks Martin observed were related to the first Martin burglary, not the second. Specifically, Martin testified that he saw ATV tracks after the first Martin burglary, but not the second Martin burglary.
     Reporters Record Volume 8, Page 289:

| | |
|---|---|
| Q. | Didn't find any ATV tracks either, did you? |
| A. | There were some ATV tracks there. |
| Q. | Where at? |
| A. | Around the back of the fence. |
| Q. | Now, that's from the first time, five to six weeks ago? |
| A. | Yeah. |
| Q. | Not from the second? |
| A. | Not from the second. |

This testimony was undisputed.

20

(2) the bolt cutters were found after the first Lattimore Materials burglary, (3) Martin's wire fence was cut during the Martin burglaries, and (4) bolt cutters are capable of cutting a wire fence, the State argued that the evidence that Fowler possessed bolt cutters in the past linked Fowler to the Martin burglaries even though they did not find any bolt cutters at the Martin property. Also, the State argued that, because all three burglaries occurred within the same time frame in nearby locations, proof tending to establish Fowler's involvement in the Blassingame ATV theft and the Lattimore Materials burglaries also proved his involvement in the second Martin burglary. Finally, the State argued that the presence of the cell phone registered to a "Mr. Fowler" linked all of the other evidence together. Consequently, viewing the evidence in the light most favorable to the verdict, and considering that the jury is entitled to make reasonable inferences from the sum total of the evidence, the State believes the evidence is sufficient to establish Fowler's guilt for the second Martin burglary.

Nevertheless, the State's evidence fails to establish an essential element of the offense charged. Specifically, the State alleged that Fowler was guilty of the offense of burglary, not theft or criminal trespass, and, as we have previously noted, "[a] person commits the offense of burglary if, without the effective consent of the owner, he or she *enters* a [building] with intent to commit theft." *Rollerson v. State*, 196 S.W.3d 810, 813 (Tex. App.—Texarkana 2006, no pet.) (emphasis added). The State alleged in the indictment here that, on or about December 14, 2014, Fowler "did then and there, with intent to commit theft, enter a building or a portion of a building not then open to the public, without the effective consent of WILLIAM MARTIN, the owner thereof." The Court of Criminal Appeals has held that "the gravamen of a burglary is the entry without the effective

21

consent of the owner and with the requisite mental state." *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). Therefore, the State obligated itself to prove that Fowler entered Martin's building where the game cameras were located with the intent to commit theft.

As we noted in *Rollerson*, entry can be proven by circumstantial evidence. *Id.* Yet, in cases where courts have found that the circumstantial evidence was sufficient to prove entry, there was significantly more evidence than is present in this case. For example, in *West v. State*, the El Paso Court of Appeals held that the following evidence was sufficient to prove that West entered the premises:

> Evidence of the rear door of the Boren house being forcibly opened; of two males and a female being in the Boren backyard; of appellant being one of the three; of appellant carrying away a rifle, a handgun, and a tool kit previously within the home; of appellant possessing the stolen diamond bracelet in his pocket; of the rifle, handgun, and tool kit being found in or by a shed within feet of appellant; of other property taken from the Boren home being found within the house wherein another male and female attempted to avoid discovery by the police; and of the three lacking permission from the Boren's [sic] to possess the property is some evidence from which a rational fact-finder could reasonably infer, beyond a reasonable doubt, that appellant was, at the very least, a party to the burglary of Mrs. Boren's home. There was ample evidence of entry without permission coupled with the commission of a theft.

*West v. State*, 536 S.W.3d 922, 925–26 (Tex. App.—El Paso 2017, pet. ref'd). Likewise, in *Rollerson*, we found the evidence was legally sufficient to prove entry where a shoe print was found at the residence matching shoes in Rollerson's possession, Rollerson's brother noticed property similar to that taken in the burglary in Rollerson's bedroom after the burglary, and a witness testified that Rollerson had attempted to sell him one of the weapons taken in the burglary. *Rollerson*, 196 S.W.2d at 813.

22

Other cases where courts have found sufficient circumstantial evidence to prove entry also included significantly more evidence than is present here. Those cases include:

- *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (evidence was sufficient to prove entry where witness testified defendant was never previously in victim's home, window of home had been forced open, defendant was linked to inside of home by a "palm print, hair sample, blood match, and DNA amplification test," money kept in home was missing, and defendant paid for car with large sum of cash on the day of the murder);

- *Marrs v. State*, 647 S.W.2d 286 (Tex. Crim. App. 1983) (evidence sufficient to prove entry where defendant met description of burglar by victim, was found walking nearby the building two hours after burglary, and cut-off blue-jean legs matching cut-off shorts defendant was wearing were found the next day near the residence);

- *Gardner v. State*, 478 S.W.3d 142 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (evidence sufficient to prove entry where defendant's friend testified defendant went to house, knocked on door, was told to leave, heard glass break, could no longer see defendant, next saw defendant with blood on his arm, and defendant's blood found inside the residence);

- *Goodeaux v. State*, 269 S.W.3d 730 (Tex. App.—Beaumont 2008, no pet.) (evidence that accomplice dropped defendant off in victim's neighborhood, picked defendant up thirty minutes later carrying television and two duffle bags, and victim's jewelry found in his possession later was sufficient to prove entry);

- *Hernandez v. State*, 190 S.W.3d 856, 865 (Tex. App.—Corpus Christi 2006, no pet.) ("[v]iewed in the light most favorable to the verdict, because the [six] burglaries were committed in a substantially similar manner, appellant's fingerprints were found at two crime scenes, and because evidence was presented showing that appellant's footprints matched those left at three of the crime scenes," evidence was sufficient to prove entry beyond a reasonable doubt);

- *Phillips v. State*, 178 S.W.3d 78 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (testimony that defendant was seen inside victim's fenced and locked backyard, that he possessed victim's floodlights after burglary, and that floodlight had been inside shed attached to the house prior to burglary was sufficient to prove entry);

- *Dixon v. State*, 43 S.W.3d 548 (Tex. App.—Texarkana 2001, no pet.) (defendant found in possession of victim's television and jewelry one hour after burglary and 150 feet from residence was sufficient to establish entry);

23

- *Williams v. State*, 997 S.W.2d 415, 416 (Tex. App.—Beaumont 1999, no pet.) (evidence sufficient to prove entry where victim observed defendant within two feet of victim's broken garage door frame less than thirty seconds after owner heard "a thumping noise like someone kicked the garage door");

- *Groome v. State*, 957 S.W.2d 919 (Tex. App.—Texarkana 1997, no pet.) (evidence sufficient to prove entry where defendant was victim's ex-husband, his fingerprint was found on outside window, but inside screen; defendant repeatedly asked for victim's video recorder; video recorder was part of property taken; defendant could only have known of victim's recent traffic ticket if he had stolen and searched her purse where she kept ticket; and defendant returned to victim only copy of wedding video which had previously been in her house);

- *Rogers v. State*, 929 S.W.2d 103 (Tex. App.—Beaumont 1996, no pet.) (evidence sufficient to prove entry where victim's neighbors saw defendant on day of burglary asking if victim was home and was later found in unexplained possession of property taken from home);

- *Nelson v. State*, 905 S.W.2d 63 (Tex. App.—El Paso 1995, no pet.) (evidence sufficient to prove entry where defendant observed riding bicycles stolen from inside of garage minutes after burglary and near the premises and gave conflicting explanations for possession);

- *Lopez v. State*, 884 S.W.2d 918 (Tex. App.—Austin 1994, pet. ref'd) (evidence sufficient to prove entry where defendant observed at premises with two others; volume of property stolen supported inference it was a joint operation; defendant later found in possession of property stolen from the building and "offered conflicting and equally implausible explanations for his possession of the property");

- *Alexander v. State*, 873 S.W.2d 793 (Tex. App.—Beaumont 1994, pet. ref'd) (evidence sufficient to prove entry where defendant was seen carrying stolen air conditioning unit after burglary; frame of unit was inside building and was plugged into interior wall socket, and furniture inside the building was found knocked over);

- *Garza v. State*, 841 S.W.2d 19 (Tex. App.—Tyler 1991, no pet.) (evidence was sufficient to prove entry where defendant seen shortly after burglary carrying stolen ladder);

- *Woods v. State*, 814 S.W.2d 213 (Tex. App.—Tyler 1991, no pet.) (evidence was sufficient to prove entry where four window screens and door screen were cut and police arrested defendant at side of house with a knife in his hand);

24

- *Macias v. State*, 704 S.W.2d 484 (Tex. App.—Houston [14th Dist.] 1986, no pet.) (evidence was sufficient to prove entry where defendant was observed jumping off victim's building, was apprehended in possession of burglary tools and stolen property, and large holes were found on first-floor ceiling);

- *Draper v. State*, 681 S.W.2d 175 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (evidence was sufficient to prove entry where apartment manager confronted defendant leaving patio area of apartment, items inside apartment moved from normal location, and defendant fled when confronted by manager); and

- *Hayes v. State*, 656 S.W.2d 926 (Tex. App.—Eastland 1983, no pet.) (evidence was sufficient to prove entry where defendant observed jumping from roof of supermarket and police later found hole in roof and tire lug wrench with tar on it near where defendant was seen).

In fact, we have not been able to find any appellate decision that found the evidence of entry to be sufficient where there was no proof of either (1) direct or circumstantial physical evidence of the defendant's presence inside the residence (such as eyewitness testimony, blood, fingerprints, shoeprints, defendant's presence at or near the premises when people were seen entering or exiting it), or (2) direct or circumstantial evidence of the defendant's direct or indirect connection to the stolen property after the burglary (physical possession, conversations with others attempting to sell the stolen property, witness testimony that the defendant was in possession of property similar to that which was stolen), or (3) both.

In the present case, no witness observed Fowler going in and out of Martin's airplane hangar, no one identified him as a member of a group observed at the premises when other members of the group were entering the building, and he was not observed at or near the premises—or in the immediate vicinity thereof—at the time of or shortly after the burglary. Additionally, no fingerprints or other forensic evidence established his presence inside the

building,[10] he was not found in possession of stolen property after the burglary, he was not shown to be involved in the sale of any stolen property after the burglary, and no witness identified him as the person who entered Martin's building. Therefore, the evidence is insufficient to establish that Fowler was guilty of the second Martin burglary.[11]

## V. Conclusion

Because we find that the evidence is insufficient to prove Fowler's guilt beyond a reasonable doubt, we find that the trial court did not abuse its discretion in granting the new trial. Therefore, we affirm the judgment of the trial court.


Ralph K. Burgess
Justice


Date Submitted:     August 4, 2017
Date Decided:       July 6, 2018

Publish

---

[10]Deputy Robinson testified that he was able to lift a complete fingerprint from a filing cabinet inside Martin's hangar. He further testified that he put the fingerprint on an evidence card, placed it into his investigation file, and looked at it the morning before he testified at trial. Nevertheless, the State never introduced the fingerprint, nor did it present any testimony to establish who the fingerprint belonged to, let alone that it belonged to Fowler.

[11]Even if the evidence could somehow be construed as placing Fowler at the fence, 25 feet away from the building—which is not supported by the record—it would be insufficient to prove entry into the building. *See Hood v. State*, 860 S.W.2d 931, 934 (Tex. App.—Texarkana 1993, no pet.) (holding that the defendant's fingerprint found on the outside of a window to the home did "not demonstrate that [the defendant] actually entered the home, and therefore, although the fingerprint does provide some evidence that [the defendant] may have been at the home at some time, it does not, in itself, establish that he committed the burglary").